Christine I. Morrison
Plaintiff, pro se
3844 Dominion Mill Dr.
Alexandria, VA   22304
703-244-7130
morrisoc28@aol.com

Temporary Address until November 30, 2017
(Due to hurricane Irma)
c/o
Mr. Chungsoo J. Lee
275 E. Street Road, #27
Feasterville-Trevose, PA   19053

**FILED**

**NOV - 2 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 333 Constitution Avenue, N.W.
### Washington, DC   20001
### Room 1225

**CHRISTINE I. MORRISON,**
*3844 Dominion Mill Drive, Alexandria VA 22304*
  **Plaintiff**

   **v.**

**ELAINE C. DUKE, Acting Secretary,**
**Kevin K. McAleenan, Acting Commissioner,**
**Ronald D. Vitiello, Deputy Commissioner,**
**Christine Gaugler, Assistant Commissioner,**
**Katherine Coffman, Deputy Assistant**
**Commissioner,**
**Department of Homeland Security,**
**U.S. Customs and Border Protection,**

  **Defendants**

*U.S. Dept of Homeland Security*
*245 Murray Lane, S.W.*
*Washington DC 20528*

:

:

:

:

:

:

:

:

:

:

:

Case: 1:17-cv-02312
Assigned To : Moss, Randolph D.
Assign. Date : 11/2/2017
Description: Pro Se Gen. Civil

**Bench Decision Requested**

## COMPLAINT

### PRELIMINARY STATEMENT

This is an employment-related action for violations of the Plaintiff's civil rights and other

1

rights by her federal employer, the U.S. Customs and Border Protection, Department of

Homeland Security, under Rehabilitation Act of 1973, and Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").   The employer engaged unlawful

employment discrimination in violation of Rehabilitation Act of 1973 and in violation of Title

VII by engaging in discriminatory and retaliatory acts against the Plaintiff based on her religion

(Roman-Catholic) and her disability (asthma and reactive airways disease and chronic

obstructive lung disease resulting from inhalation of smoke and the varied toxic fumes from the

Pentagon building, the aircraft, and the jet fuel caused by the 911 attack on Sept. 11, 2001) and

for her participation in the prior protected activity.   The Plaintiff was unlawfully denied her

requests of reasonable accommodation, was demoted, and discriminated and retaliated against in

terms and conditions of employment and harassment, forcing her no choice but to take transfer

and demotion to another unrelated federal agency at a considerable cut in salary.


## JURISDICTION AND VENUE

1.   This Court has jurisdiction pursuant to 29 U.S.C. § 701, Rehabilitation Act of 1973

and 28 U.S.C. §§ 1331, Title VII, and related sections applicable as the United States and/or its

agencies are a named defendant to the action.

2.   The unlawful employment practices alleged below were committed and/or executed

by supervisory personnel of the US Customs and Boarder Protection, Department of Homeland

Security   ("CBP" or "employer").   The claims arise from events in the Office of Human

Resources Management, Program Management Division, Customs and Border Protection,

Department of Homeland Security, 1400 L Street, Washington, DC. 2005. Accordingly, venue

2

lies in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3.    The pro se Plaintiff, Christine I. Morrison, is an adult individual who has a mailing address of 3844 Dominion Mill Dr., Alexandria, VA   22304.   Her phone number is: 703-244-7130.   Her email is: morrisoc28@aol.com.   Due to Hurricane Irma that impacted her elderly and medically dependent father in Florida, Plaintiff can receive her mail at the following address until November 30, 2017: c/o Mr. Chungsoo J. Lee, 275 E. Street Road, #27, Feasterville-Trevose, PA   19053.   At all relevant time prior to the demotion at issue in this matter, Plaintiff was Supervisory Management Program Analyst, GS-0343-15.

4.    The Defendants, ELAINE C. DUKE, Acting Secretary; Kevin K. McAleenan, Acting Commissioner; Ronald D. Vitiello, Deputy Commissioner; Christine Gaugler, Assistant Commissioner; Katherine Coffman, Deputy Assistant Commissioner, are/were management officials at the U.S. Customs and Boarder Protection, Department of Homeland Security, that employed the Plaintiff and is the named defendants herein in their official capacity.

5.    The United States Department of Homeland Security engages in commerce for the purposes of Rehabilitation Act and Title VII and qualifies as an employer within the meaning of the statute and regulations at issue.

## STATEMENT OF FACTS

6.    The Plaintiff was hired for the position of Supervisory Management Program Analyst

[Director], GS-343-15, for the Program Management Division (PMD) of the Office of Human

Resources Management (HRM) on June 7, 2009.

7.    The Plaintiff reported to HRM Assistant Commissioner (AC) Christine Gaugler as

her first level supervisor from June 7 to September 16, 2009.

8.    The Plaintiff reported to Deputy Assistant Commissioner (DAC) Katherine Coffman

starting from September 16, 2009 as her first level supervisor, at which time Ms. Gaugler

became her second level supervisor.

*Plaintiff's Disability*

9. In his September 29, 2009 letter (3 pages) Plaintiff's treating physician, Dr. Muir cited

18 medical conditions:

> concussion, extensive scalp laceration, contusion to the chest wall, neck and upper
> back, thoracic strains, and lumbar strains, cutaneous burns, respiratory failure due
> to inhalation of smoke, carbon monoxide and fumes.

He further listed:

> residual post-concussive syndrome; traumatic brain injury with impaired
> concentration, cognition, memory and attention; headaches; sleep disturbance;
> hearing loss; hyperacusis; tinnitus; vertigo.

He continued:

> post-traumatic stress disorder, and cognitive impairment.

Furthermore, he listed:

> multiple orthopedic sequelae including cervical strain, degenerative disc disease,
> myofascitiis, and lumber facet syndrome.

He also listed:

> asthma and reactive airways disease and chronic obstructive lung disease resulting
> from inhalation of smoke and the varied toxic fumes from the Pentagon building,
> the aircraft, and the jet fuel caused by the 911 attack (Sept. 11, 2001).

4

He then remarked:

> Because of her lung injuries, Ms. Morrison has strong sensitivities which require
> air purifiers and professional help to clean her home."

Dr. Muir's list continued:

> blast injuries involving musculoskeletal systems and internal organs; hearing loss,
> muscle spasms, and esophageal spasms on ongoing basis.

He also listed:

> 1st and 2nd degree burns over her body, residual dermatitis and skin sensitivities
> needing ongoing care and topical therapies.

Dr. Muir wrote that "[a]ll these problems are a direct result of injuries sustained on 9-
11-01."

*Interference with Major Life Activities*

10. Plaintiff is a person with disability within the meaning of Rehabilitation Act of 1973,

in that her impairment substantially interferes with the major life activities as follows:

> JAN Consultation for Reasonable Accommodation certified:   "
>
> > someone with this injury may easily loose track while taking notes and
> > listening to information simultaneously…may not be able to write at the
> > speed of someone talking in these sessions and may miss key points.
> > Based upon the employee's injuries…the employee may only get the first
> > few thoughts and may then get lost trying to concentrate on her note
> > taking or may get behind…

11. Plaintiff is unable to remember recent conversations or events unless taking notes.

Her speech is intermittently illogical. Unable to drive long time due to loss of sense of

direction and time.

12. Plaintiff is unable to understand complex commands, unable to retain high level

learned materials, unable to follow verbal directions on the streets, unable to carry on

a conversation without assistive devices, unable to do house chores, unable to sleep,

loss of interest in socializing, stopped going to church, has not gone to movie theatre

for more than 2 years, difficulty in concentration, rare sexual intimacy, forget to eat

sometimes and eat nervously some other times, unable to do house chores due to loss

of time consciousness and OCD, forget to dress up when going out.

*Plaintiff's Prior Protected Activities*

13. August 18, 2009 Plaintiff asked for a procurement requisition for herself as a

Reasonable Accommodation (RA), disclosing a medical condition, and it was approved by

Christine Gaugler, Assistant Commissioner (AC).

14.     October 1, 2009 Plaintiff provided Franklin C. Jones, Executive Director, Office

of Diversity Civil Rights, a Request for RA letter from Plaintiff's Deputy, Barry Williams.

Williams designated the Plaintiff to deliver to EEO his requested RA (transfer)

15.     October 1, 2009 Plaintiff    provided    Executive Director Jones the September

29, 2009 letter (3 pages) from Dr. Muir citing 18 conditions and specific RA Plaintiff required.

16.     October 6, 2009 Plaintiff delivered a chronological note to CBP EEO Specialist

Adline Tatum and     Executive Director Jones, chronicling her superiors' actions and

interactions with Plaintiff, including her account of requesting accommodations based on her

disability.

17.     On October 6, 2009 Plaintiff filed an EEO chronology with Adline Tatum, CBP.

On October 7, 2009 Plaintiff faxed her supplement to the CBP EEO.

18.     October 29, 2009 2:33pm Plaintiff emailed to CBP EEO Specialist Tatum and Executive Director Jones,     "Notice of Right to File a Formal Complaint, FMLA."

**The Plaintiff alleges that based on her disability identified above, her prior protected activities identified above, and based on her religion (Roman Catholic), she was discriminated and retaliated against as follows:**

*Denied Reasonable Accommodation*

19.   In his September 29, 2009 letter (3 pages) Plaintiff's treating physician, Dr. Muir cited 18 medical conditions and requested the following accommodations: flexible work hours, break and time to exercise at least three times a week.   He wrote: "For over five years she has needed and benefited from regular chiropractic care with physical therapy modalities and massage therapy to maintain a minimal level of function.     program up to 12 weeks.   Without regular care, she regresses and is unable to keep up with her daily demands of work and life."

20.   On October 1, 2009, Plaintiff provided Dr. Muir's September 29, 2009 letter to Executive Director Jones, CBP EEO, Office of Diversity and Civil Rights.

21.   Since October 1, 2009 Plaintiff had notified the Deputy Assistant Commissioner Coffman and the AC (Assistant Commissioner) Gaugler of her need to use up to 12 weeks of accrued unused sick leave to participate in a rehabilitation program located in an out-of-state facility, that she requested numerous other accommodations, that the AC and the DAC delayed responding to her requests until May 2010 and when they finally did respond, they failed to grant her all of the accommodations that she had requested."

22.   Upon returning from FMLA in January 2010 Plaintiff submitted a reasonable accommodation request including but not limited to use of 12 week accrued unused sick leave to

attend a rehabilitation program and use of accrued sick leave for medical care as needed.

23. On February 2, 2010   Dr. Muir sent a letter (2 pages) (via email to Gaddis,

accommodation coordinator), a reply to DHS January 13, 2010 request for additional medical

information, PD & 7 questions. Dr. Muir reiterated Plaintiff's medical impairments and listed

several major life activities that were affected and states:

> *Recently, she has been unable to keep up with her regular medical and*
> *rehabilitative care.   She also believes her current work environment has quite a*
> *bit to do with this decline in her health and I am inclined to agree with her.*
> *Since without such care, her health has regressed, I have advised her to*
> *immediately take medical leave and participate in a    specifically identified 10-12*
> *week rehabilitation program outside of the metropolitan area.*

24. On    February 17, 2010 10:07 am, Wednesday, Plaintiff emailed DAC Coffman:

> Thank you for extension (GOV offices closed four of five days).....You have
> recently added the requirement for me to develop a business model for the HRM
> on the unemployment compensation process.   I will do the best I can on this but
> please realize that I do need training on business models, such as Lean Six Sigma.
> Also update on continuing need for RA as discussed in our meetings of February
> 3, 2010;   Office heat/air quality.   I regret to inform you these leftover spaces,
> appear to have similar lack of vents so I have no way of knowing if they would
> provide better air quality and relief from excessive heat.   Also, these locations
> appear to have high activity/traffic and would be a distraction to work.   This new
> environment continues to make me sick, since January 21, 2010, and is seriously
> adversely affecting my ability to work and *breathe*.   I understand from the
> facility representatives inspecting this area yesterday, February 16, 2010, that
> these spaces do not have air ducts, the thermostats are not linked to the space and
> only heat is returned.   I respectfully request again, an expeditious and reasonable
> facility accommodation, including my original office or that neighboring but
> comparable office recently vacated by Barry William.   Re   Reasonable
> Accommodations request for 12 weeks leave, I submitted medical documentation
> to support my leave to EEO on February 4, 2010.   I also submitted to you on
> February 4, 2010 a Request for Leave that I be permitted to use my accrued sick
> leave for such accommodation indicating that supporting documents were
> submitted to EEO.   When I submitted the form to you, I indicated that my health
> is declining and that I really needed the leave.   You indicated that you could not
> do anything without consulting with EEO.   While I certainly realize the

need to coordinate with other departments, I am hopeful that a decision will be made promptly.

25. On March 5, 2010 DAC Coffman issued a letter to Plaintiff changing tour of duty and threatening AWOL unless Plaintiff calls in within one hour of beginning TOD. (ROI #2, Exhibit F7b, pp. 400-401).

26. On March 5, 2010 Ms. Francine Wiese (FKW), Plaintiff's attorney, emailed to CBP Attorney Catharine Goldman, confirming her handling of the RA request and reporting that the Agency's delay is tantamount of denial of leave request as RA request per the EEOC guidelines. On March 10 Ms. Wiese followed up with requesting a conference call. On March 10 Ms. Goldman replied and deferred to Diversity and Civil Rights office.

27. On March 5, 2010 DAC Coffman signed a letter charging under Charge 1: Failure to Complete Assignment in Timely Manner; SPECIFICATION 1: Idea Factory and SPECIFICATION 2: Unemployment Compensation. (ROI #2, Exhibit F8e pp. 472-4).

28. On March 6, 2010 Plaintiff emailed to Executive Director Jones reporting threats of suspension and requesting relief for the hostile work environment by senior leadership and her need for reasonable accommodation, stating: "I'm asking for your help to immediately advocate." (ROI # 2, Exhibit F60, pp. 278-279).

29. On March 6, 2010 Plaintiff emailed to Executive Director Jones, who ignored her. Plaintiff wrote: "..highest fear for my health, safety and livelihood in CBP I'm asking for my

9

reasonable accommodation case be elevated to the DHS to process including that I    be

reassigned outside of DHS    where I can succeed in, as I have in the past 32 years and with my

disabilities…" (ROI # 2, Exhibit F60, pp. 278-279).


30.      On March 8, 2010 Plaintiff's Doctor wrote: "Due to acute illness, I am

recommending that Ms. Morrison be out of work for this week and next week."

31.      On March 10, 2010 Kristy Montes, Director, Field Operations-West, Office of

Diversity and  Civil Rights (DCR), CBP, emailed, rejecting the request to meet with Plaintiff's

attorney, denying the counsel request to meet, stating: "DCR does not coordinate or

communicate with representatives in the RA process."

32.      On March 17, 2010 Plaintiff's Doctor wrote: "Due to ongoing acute illness, I am

recommending that Ms. Morrison be out of work March 22 – April 2, 2010."

33.      On March 19, 2010 DAC Coffman issued a letter, demanding additional medical

information due to "ongoing acute illness" with 8 questions (ROI #2, Exhibit F9a, pp. 500-501).

In this letter DAC Coffman harassed Plaintiff by, among other things, the threat of being put on

AWOL if she was not satisfied with Plaintiff's physician's answers to questions about why

Plaintiff was taking sick leave and an original signature by her physician on the request for her

taking leave and his justification for such leave and that Plaintiff provide her home address for

transmittal of the letter acquiring additional medical assessment.

34.      On March 23, 2010 Plaintiff's Doctor wrote to DAC Coffman: *"Despite following*

*all medical advice Ms. Morrison continues to be sick.    Her ongoing acute illness precludes her*

*return to work safely.    I recommend that she be out of work through April 17, 2010."*

35.     On March 29, 2010 Plaintiff's Doctor's third medical assessment to the Agency's March 25 request, containing some 110 questions, was provided.

36.     On March 30, 2010 Dr. Muir wrote a letter to DAC Coffman     (3 pages) and Doctor's scrip for out of work through April 17, 2010 and Doctor's scrip for out of work thru May 1.

37.     On April 7, 2010—some 6 months after Plaintiff's first request for reasonable accommodation—the Deputy Assistant Commissioner (DAC) Coffman, in consultation with Director of the Diversity and Civil Rights (DCR) and the Agency's Office of Chief Counsel, made the determination that Plaintiff was a qualified individual with a disability within the meaning of the Rehabilitation Act.

38.     On April 14, 2010 Plaintiff's Doctor wrote to DAC Coffman: "Although Ms. Morrison has remained compliant with medical advice, Ms. Morrison continues to be sick. This ongoing acute illness forces my recommendation that she remain out of work through May 1, 2010."

39.     On April 27, 2010 Plaintiff's Doctor wrote to DAC Coffman: "Due to ongoing acute illness I recommend that Ms. Morrison remain out of work May 3 -   May 15, 2010.   Her ongoing illness precludes her return to work safely."

40.     On April 29 2010 Plaintiff's doctor answered DAC Coffman's April 22, 2010 request, improperly demanding and pressuring Plaintiff to tell her when Plaintiff would be participating in the 12 week rehabilitation program.     Doctor wrote:"I expect Ms. Morrison to be strong enough to attend the 12 week rehabilitation program in mid to late May."

41.     On May 11, 2010 Plaintiff's doctor wrote a scrip to DAC Coffman: "Due to ongoing acute illness I recommend that Ms. Morrison remain out of work through May 17 – May 28 2010.   Her ongoing illness precludes a safe return to work."

42.   On May 11, 2010 Plaintiff's Doctor wrote a scrip: "I recommend that Ms. Morrison participate in a prescribed rehabilitation program May 31 – Aug 27, 2010.   The time period is extended by 4 days from the 12 weeks previously requested because of the availability of the program to take Ms. Morrison, additional travel time required to obtain the treatment and holidays that the program will not be open for treatment."

43.   The DAC Coffman issued final decision on May 19, 2010--some 7 and half months after the accommodation requests--granting the following accommodation requests:

> (1) time off for medical and rehabilitation care, pending receipt of appropriate medical documentations;
> (2) flexible work hours;
> (3) a modified work schedule] with the requirement that Plaintiff work the required core hours of 9:30 AM to 3:00 PM and if she could not, to provide documentation sufficient to justify a schedule outside the core hours;
> (4) breaks;
> (6) memoranda providing detailed instructions in the event Plaintiff had difficulty understanding assignments] to be provided as necessary;
> (7) a laptop for Plaintiff's use during meetings or training;
> (8) written minutes of meetings being provided to Plaintiff;
> (9) a tape recorder or extra time to transcribe meeting notes;
> (11) a work area with adequate ventilation and a temperature control mechanism with provision of two fans, an air purifier and a space heater; and
> (12) authorization to use accrued leave to participate in 12-week out-of-state rehabilitation program.

44.   The accommodations that were finally approved on May 19, 2010 were too late and

12

ineffective, due to Plaintiff's worsened medical conditions; and omitted the key items as follows:

      (5) use of a gym three times per week during work hours;

      (10) training;

      (13) transfer.


*Demotion, Office Change, Counseling, and One-Day Suspension*

46.      October 7, 2009 DAC Coffman issued a counseling letter with unwarranted and vexatious accusations of performance deficiencies.

47.      October 28, 2009 DAC Coffman issed a letter, demoting the Plaintiff from Supervisory Management and Program Analyst to Program Manager (non-supervisory) effective October 25, 2009.

48.      October 30, 2009 an investigation was filed against Plaintiff with the "Joint Intake."

49.      November 10, 2009 letter from DAC Coffman demanding original FMLA documentation in 10 days or be placed in an AWOL status …to include removal from the Federal service.

**50.**      January 8, 2010 DAC Coffman emailed to Plaintiff's personal email account (AOL), notifying her that she would "need to move from previous office occupancy and move to **"room 911".**     As a survivor of 9-11 that unique number was not lost on Plaintiff**.**

51.      The room 911 was overly hot and had poor ventilation.    Plaintiff told Coffman that she could not breathe and had difficulty working there and that she had to take leave because of the "office fumes and heat."    When Plaintiff was provided a fan, it was not effective.

52.    On February 17, DAC Coffman refused to permit Plaintiff to move into one of two offices in PMD, her prior office or one that used to be occupied by Plaintiff's former Deputy and    which was vacant.    Both of these rooms had better ventilation.

53.    March 5, 2010, by letter dated March 5, 2010, Coffman proposed that Plaintiff be suspended for two days for failure to timely submit two assignments.

54.    March 5, 2010 by this letter DAC Coffman threatened Plaintiff with discipline if Plaintiff failed to follow a new leave procedure.    She pressured Plaintiff into changing her duty hours.    This altered /modified her work schedule and flexibility.

55.    By letter dated June 7, 2020 AC Gaugler, who was Plaintiff's second    level supervisor, suspended her for one day while she was on sick leave.

*Unreasonable Performance Standard and Pass/Fail Performance Plan*

56. On August 18, 2009, DAC Coffman issued Plaintiff's Performance Plan (PP) with the impossible goal of meeting the deadlines by October 31, 2009, mere two and half months thereafter.

57. Plaintiff was told the gist of the PP.    When she requested a time to review, the request was denied.

58. Plaintiff's request to discuss the performance plan, subsequent to signing the PIP, was denied, even though it was promised.

59. Until August 18, 2009 Plaintiff was not provided with an opportunity to review her PP.

14

60. The two objective performance goals indicated in the Performance Plan were a
problem for the Agency for years.      They were unreasonable, unrealistic, and
outside Plaintiff's position description (PD) (i.e., duties requiring the
Unemployment Compensation expertise).

61. The UC expertise simply did not exist.      This UC was a problem for the agency
for years and this assignment was reprisal for Plaintiff engaging in a prior
protected      employment activities and a set up for failure which served the
Agency purpose to issue an Adverse employment action.

62. The following females, with no known disability and with no prior EEO activity,
were also involved with the complicated UC project, none had the desired UC expertise either
and were not provided with such a goal as the Plaintiff was;

(a) Katherine Coffman, SES Deputy AC directed in the September 29, 2009, 325 pm
email from Christine Gaugler, Assistant Commissioner(AC) , Office of Human
Resources (HRM)    to Coffman "have Ardis prepare a short summary about how
UC works...".    (ROI #1, Exhibit F12a, pp. 34);

(b) Ardis Belton, Senior Budget Analyst directed in the September 29, 2009, 328 pm
email from Coffman to Ardis "pls have this summary by tomorrow morning..."
(ROI #1, Exhibit F12a, pp. 344);

(c) Lorraine Jenkins, CBP Mission Support Specialist directed in the September
30, 2009, 116 pm email from Jenkins to Coffman    (re Chris Gaugler questions
on Unemployment Compensation). (ROI #1, Exhibit F12a, pp. 345);

(d) Dawn Franklin, Indianapolis Hiring Center, directed in the September 30, 2009,
142 pm email from Morrison to Coffman    (re Chris Gaugler questions on
Unemployment Compensation).    (ROI #1, Exhibit F12a, pp. 346-347);

(e) AC Gaugler, expanding the UC scope, directed in the October 2, 2009, 1730 am
email from Coffman to Morrison/Ardis (re Chris Gaugler questions on
Unemployment Compensation).    (ROI #1, Exhibit F12a, pp. 348);

(f) Sharon Lamb, CBP Mission Support Specialist, directed in the October 7, 2009,

1241 pm email from Lamb to Coffman UC FY 08 explanation.    (ROI #1, Exhibit F12a, pp. 349-354);

62.    No other predecessors were placed under such a unreasonable Performance Plan, such as Paul Holbert, Lynne Smith, Joyce Turnquist.     None of them are Roman Catholic. They had no known disability and had not engaged in prior protected activities.

63.   Plaintiff's predecessors, with no known disability and no prior EEO activity, did not achieve this objective in Performance Goal 3 and were not similarly disciplined or demoted.

64.    Upon her return from FMLA leave in January 2010, DAC Coffman issued Plaintiff the pass/fail performance plan the Agency uses for non-supervisory positions.


*Work Assignments, Unreasonable Deadlines, Denied Alternative Work Schedule, Disparate Monitoring, and Unreasonable Reporting Requirements/Monitoring*

65.    Plaintiff was not provided readily usable equipment until February 11, 2010 when her deactivated email/BB accounts were restored and she was ill.

66.    By letter dated March 5, 2010 Plaintiff was advised of the expectation that she must be at her workstation at the beginning of her tour of duty, the requirement to contact a supervisor within one hour of the beginning of her tour        of duty if she needed to request unscheduled leave, and the consequences of any tardiness or unapproved leave (CHARGE of AWOL and disciplinary actions up to and including removal of federal service).


*Retaliatory Nexus*

**The causal connection exists between the EEO protected activities which started August 18, 2009 and October 1 2009 escalated into a retaliatory motivation.**

16

67.     Plaintiff was receiving praise for her work before she engaged in protected employment activities October 1, 2009 and requested Reasonable Accommodation:

    a.   June 22, 2009     "Absolutely outstanding work,....use as model" from Gaugler (ROI # 1, Exhibit F25d, pp. 644);

    b.   July 14, 2009 "Good summary and good work "from Gaugler (ROI # 1, Exhibit F25d, pp. 643);

    c.   September 2, 2009 "subj:     Congratulations" from Coffman (ROI # 1, Exhibit F25c, pp. 632);

    d.   September 3 2009 "subj:     Great message" from Coffman (ROI # 1, Exhibit F25c, pp. 634-635);

    e.   September 16, 2009 "subj:     Nice job" from Coffman (ROI # 1, Exhibit F25c, pp. 636-637);

    f.   September 25, 2009 "subj:     Great staff work" from Coffman (ROI # 1, Exhibit F25c, pp. 638-639);

    g.   October 7, 2009 "subj:     Great msg to staff" from Coffman (ROI # 1, Exhibit F25c, pp. 640-641).

68.     After Plaintiff engaged in protected employment activities and requested

Reasonable Accommodation, it resulted in atmosphere of adverse actions:

    a.   Retracted/altered a modified work schedule – flexible hours;

    b.   Refused/delayed/denied permitting the timely use of accrued leave;

    c.   Refused assigning to usable space previously occupied;

    d.   Refused reassigning to a vacant position outside agency as per doctor and other employee;

    e.   Refused altering the manner in which an essential function is performed;

    f.   Delayed therefore denied request to use accrued sick leave to participate in medical treatment                recommend by her physician for 3-1/2 months;

g.  Agency and Decision Makers deliberately ignored reports from Plaintiff and her
    doctor                on her declining health. S/L Time & attendance (ROI#2,
    Exhibit 8b pp. 426-430);

h.  Deliberate failure to follow doctor's instructions e.g. accommodating Plaintiff's
    breathing problem;

i.  Failure to provide reasonable accommodations on a timely basis;

j.  Requiring unnecessary information before giving the accommodation;

k.  Lead to physical threat that unreasonably interfered with the Plaintiff's
    employee performance.

*Constructive Discharge*

69.     Plaintiff sought an employment with a different, unrelated to the DHS, agency
and took a lower grade salary.      Due to discriminatory and retaliatory acts described above, on
September 27, 2010, Plaintiff had no choice but to take a transfer to a lower grade employment
elsewhere in the federal government unrelated to the Agency.


## EXHAUSTION OF ADMINISTRATIVE REMEDIES

70.     On December 16, 2016 Office of Federal Operations at Equal Employment
Opportunity Commission issued the appeal decision (mailed on January 9, 2017 and received by
Plaintiff on January 13, 2017) in this matter (OFO Appeal No. 0120140579; EEOC hearing
numbers: 570-2010-00854X; 570-2011-00177X; Agency Case Numbers: HS-09-CBP-000441-
000601; HS-10-CBP-006470-000603) and identified the following as the accepted issued:

1) Between July 2009 and June 2010, the AC and the DAC
   subjected Plaintiff to disparate treatment and harassment because of
   her religion (Catholic), disabilities (residual effects of physical
   injuries sustained on September 11, 2001 and post traumatic stress
   disorder) and in reprisal for initiating a request for a reasonable
   accommodation:

a.  Since July 2009, Plaintiff had been given work assignments with unreasonable time frames and had not been given sufficient time and resources to complete her assigned tasks without skipping breaks and lunch periods.

b.  From July through October 2009, Plaintiff had been denied an alternative work schedule (AWS).

c.  On September 9, 2009, Plaintiff was issued a performance plan with unreasonable expectations.

d.  In October 2009, the time frame for Plaintiff to submit medical documentation to support her request for extended leave was shortened from 30 days to 15 days.

e.  On October 1, 2009, Plaintiff's request for acknowledgement of compensatory time worked from July through October 2009 was not responded to.

f.  On October 7, 2009, Plaintiff was issued a letter of counseling.

g.  While on Family and Medical Leave Act (FMLA) leave between October 2009 and January 2010, Plaintiff was required to submit unnecessary paperwork, denied a laptop computer, and had her computer and    her    Blackberry deactivated.

h.  An investigation by the Office of Internal Affairs (OIA) was initiated against Plaintiff on an unspecified date whereas her allegations of a hostile work environment were not investigated by_ OIA.

i.  In October 2009, Plaintiff was reassigned from her supervisory Management Program Analyst position to a non-supervisory Program Manager position and given a subjective pass/fail performance plan.

j.  Plaintiff was berated from bringing a subordinate's accommodation request to the EEO office and was accused of creating a health issue for that employee.

k.  Between June 2009 and February 2010, Plaintiff has been subjected to verbal and written criticism.

    l.  By lettet dated March 5, 2010, Complaint was advised of:

        i.  The expectation that she must be at her workstation at the beginning of her tour of duty;

        ii.  The requirement to contact a supervsor within one hour of beginning her tour of duty if she needed to request unscheduled leave; and

        iii.  The consequences of any tardiness or unapproved . leave (charge of absence without leave and disciplinary actions up to and including removal from Federal service).

   m.  By letter dated March 19, 2010, the Agency provisionally approved a leave request by Plaintiff for March 22 through April 2, 2010, pending receipt of additional medical information.

   n.  On June 7, 2010, Plaintiff was suspended for one day for failure to complete her assignments on time.

2)    Denial of reasonable accommodation:

    a.  Plaintiff had been required to submit unnecessary and excessive medical documentation in support of her leave requests.

    b.  Plaintiff had been denied the right to legal representation during the processing of her accommodation requests.

    c.  The Agency had not engaged in the interactive process for providing accommodations in good faith.

    d.  Plaintiff's request for accommodations had not been timely processed, resulting in her inability to participate in a rehabilitation program and her being forced to take sick leave because of the toxic environment.

    e.  Plaintiff had been provided inaccurate and inconsistent information about the reasonable accommodation process.

    f.  Plaintiff had not been provided the identity of those providing input into the Agency's decision on her reasonable accommodation requests.

    g.  As of May 2010, the Agency refused to grant Plaintiff all of her requested accommodations.

3) Constructive discharge: On September 27, 2010, Plaintiff was forced to resign

from the Agency and accept a lower-graded position with another federal agency.

71.     On June 15 Office of Federal Operations, EEOC, denied Plaintiff's request for reconsideration of the OFO's December 16, 2016 Decision; and informed Plaintiff of her right to file a civil action at the US District Court Complaint within 90 days of receipt.

72.     The Plaintiff has performed all conditions precedent, if any, required for the filing and pursuit of a claim for judicial relief under Title VII and its related regulations.

## REMEDIES and RELIEF

73. The Plaintiff is entitled to relief under Rehabilitation Act and Title VII for her employer's unlawful discriminatory conduct and retaliation, including but not limited to the constructive discharge (i.e., the forced transfer to another unrelated agency in the federal government at a lower salary).

74.     The Plaintiff respectfully requests that the Court enter judgment in his favor and against the Defendant and direct the following relief:

a.      For a money judgment representing compensatory damages, including lost wages, and all other sums of money, including retirement benefits and other employment benefits, together with interest thereon;

b.      For an Order directing the Defendants to reinstate the Plaintiff to the position of Supervisory Management Program Analyst [Director], GS-343-15, for the Program Management Division (PMD) of the Office of Human Resources

Management (HRM);

c.      In the alternative to the relief requested in preceding subparagraph, for an Order

directing the Defendant pay the Plaintiff front pay from the present to and until

January 30, 2019 minus any income accrued between September 27, 2010 and the

present.

d.      That the Court retain jurisdiction over this action until the Defendant has fully

complied with Orders of this Court and that the Court require Defendant to file

such reports as may be necessary to supervise such compliance;

e.      For costs of litigation during the administrative processes, including an award of

reasonable attorneys' fees in the approximate amount of $250,000; and

f.      For such other and further relief as may be just and proper.


<u>NO JURY DEMAND</u>

75.      The Plaintiff herein hereby a bench decision on all issues in this action.


WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in her

favor and against the Defendants.

                                            Respectfully Submitted,

Date:   September 11, 2017              Christine I. Morrison
                                        Plaintiff, pro se
                                        3844 Dominion Mill Dr.
                                        Alexandria, VA    22304
                                        703-244-7130
                                        morrisoc28@aol.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that the above was served on

      THE UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF COLUMBIA
      333 Constitution Avenue, N.W.
      Washington, DC   20001
      Room 1225

Via Priority Mail (tracking no: 9405 8036 9930 0502 9794 46) on September 11, 2017 by:

      Mr. Chungsoo J. Lee
      275 E. Street Road, #27
      Feasterville-Trevose, PA   19053

      Chungsoo J. Lee
      275 E. Street Road, #27
      Feasterville-Trevose, PA   19053

23

# USPS Tracking® Results

FAQs › (http://faq.usps.com/?articleId=220900)

Track Another Package +

Remove ✕

**Tracking Number:** 9405803699300502979446

▶          ▶          ▶          Delivered

## Product & Tracking Information

See Available Actions

**Postal Product:**
Priority Mail®

**Features:**
Insured

| DATE & TIME | STATUS OF ITEM | LOCATION |
|---|---|---|
| **September 18, 2017, 1:29 pm** | **Delivered, To Mail Room** | **WASHINGTON, DC 20001** |
| | ▲ | |
| Your item has been delivered to the mail room at 1:29 pm on September 18, 2017 in WASHINGTON, DC 20001. | | |
| September 17, 2017, 12:32 pm | Arrived at Hub | WASHINGTON, DC 20018 |
| September 17, 2017, 6:08 am | Arrived at USPS Regional Destination Facility | WASHINGTON DC DISTRIBUTION CENTER |
| September 14, 2017, 10:05 am | Out for Delivery | WASHINGTON, DC 20001 |
| September 14, 2017, 9:55 am | Sorting Complete | WASHINGTON, DC 20001 |
| September 14, 2017, 6:49 am | Departed USPS Regional Facility | WASHINGTON DC NETWORK DISTRIBUTION CENTER |
| September 13, 2017, 1:55 pm | Arrived at USPS Regional Destination Facility | WASHINGTON DC NETWORK DISTRIBUTION CENTER |
| September 13, 2017, 9:17 am | Arrived at USPS Facility | HYATTSVILLE, MD 20785 |
| September 13, 2017, 5:11 am | Departed USPS Regional Facility | PHILADELPHIA PA NETWORK DISTRIBUTION CENTER |
| September 12, 2017, 11:52 pm | Arrived at USPS Regional Origin Facility | PHILADELPHIA PA NETWORK DISTRIBUTION CENTER |
| September 12, 2017, 10:37 pm | Accepted at USPS Origin Facility | FEASTERVILLE TREVOSE, PA 19053 |
| September 12, 2017 | Pre-Shipment Info Sent to USPS, USPS Awaiting Item | |

See Less ⌃

**Available Actions**

See Less ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs (http://faq.usps.com/?articleId=220900)**

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

* NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment. **app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fgo%2FTrackConfirmAction%21input**

**(https://www.usps.com/)**

**HELPFUL LINKS**

Contact Us (https://www.usps.com/help/welcome.htm)

Site Index (https://www.usps.com/globals/site-index.htm)

FAQs (http://faq.usps.com/)

**ON ABOUT.USPS.COM**

About USPS Home (http://about.usps.com/)

Newsroom (http://about.usps.com/news/welcome.htm)

USPS Service Updates (http://about.usps.com/news/service-alerts/welcome.htm)

Forms & Publications (http://about.usps.com/forms-publications/welcome.htm)

Government Services (https://www.usps.com/gov-services/gov-services.htm)

Careers (http://about.usps.com/careers/welcome.htm)

**OTHER USPS SITES**

Business Customer Gateway (https://gateway.usps.com/)

Postal Inspectors (https://postalinspectors.uspis.gov/)

Inspector General (http://www.uspsoig.gov/)

Postal Explorer (http://pe.usps.gov/)

National Postal Museum (http://www.postalmuseum.si.edu/)

Resources for Developers (https://www.usps.com/webtools/welcome.htm)

**LEGAL INFORMATION**

Privacy Policy (http://about.usps.com/who-we-are/privacy-policy/privacy-policy-highlights.htm)

Terms of Use (http://about.usps.com/termsofuse.htm)

FOIA (http://about.usps.com/who-we-are/foia/welcome.htm)

No FEAR Act EEO Data (http://about.usps.com/who-we-are/no-fear-act/welcome.htm)

Copyright © 2017 USPS. All Rights Reserved

 **(https://www.facebook.com/USPS?rf=108501355848630)**     **(https://twitter.com/usps)**

 **(http://www.pinterest.com/uspsstamps/)**     **(https://www.youtube.com/usps)**



*Cut on dotted line*

## Instructions

1. Each Click-N-Ship® label is unique.  Labels are to be used as printed and used only once.  DO NOT PHOTO COPY OR ALTER LABEL.

2. Place your label so it does not wrap around the edge of the package.

3. Adhere your label to the package.  A self-adhesive label is recommended.  If tape or glue is used, DO NOT TAPE OVER BARCODE.  Be sure all edges are secure.

4. To mail your package with PC Postage®, you may schedule a Package Pickup online, hand to your letter carrier, take to a Post Office™, or drop in a USPS collection box.

5. Mail your package on the "Ship Date" you selected when creating this label.

### Click-N-Ship® Label Record

**USPS TRACKING # / Insurance Number:**
**9405 8036 9930 0502 9794 46**

| | | |
|---|---|---|
| Trans  # | 414421597 | Priority Mail® Postage $6.65 |
| Print Date | 09/11/2017 | Insurance Fee $0.00 |
| Ship Date | 09/11/2017 | Total $6.65 |
| Expected Delivery Date | 09/13/2017 | |
| Insured Value | $10 00 | |

From:   CHUNGSOO J LEE
        EEO 21, LLC
        275 E STREET RD UNIT 27
        FSTRVL TRVOSE PA 19053-4762

To:     US DISTRICT COURT
        FOR THE DISTRICT OF COLUMBIA
        333 CONSTITUTION AVE NW RM 1225
        WASHINGTON DC 20001-2802

* Retail Pricing Priority Mail rates apply   There is no fee for USPS Tracking® service on Priority Mail service with use of this electronic rate shipping label  Refunds for unused postage paid labels can be requested online 30 days from the print date

**UNITED STATES POSTAL SERVICE®**   *Thank you for shipping with the United States Postal Service!*
*Check the status of your shipment on the USPS Tracking® page at usps.com*